NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

09-1139

EDNA MILLER, ET UX.

VERSUS

ARIZONA CHEMICAL CO., INC., ET AL.

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
THIRTY-THIRD JUDICIAL DISTRICT COURT
PARISH OF ALLEN, NO. C-2000-698
HONORABLE PATRICIA C. COLE, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

OSWALD A. DECUIR
JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Ulysses Gene Thibodeaux, Chief Judge, and Oswald A. Decuir and Elizabeth A. Pickett, Judges.

AFFIRMED.

Michael A. Chernekoff
Amy C. Cowley
Jones, Walker, Waechter, Poitevent,
Carrère & Denègre, L.L.P.
201 St. Charles Ave., 50th Fl.
New Orleans, LA 70170
(504) 582-8264
Counsel for Defendants/Appellees:
    Timothy J. Dempsey
    Arizona Chemical Company, Inc.

**Errol David Deshotels**
**Deshotels, Mouser & Deshotels**
**317 W. 6th Avenue**
**Oberlin, LA 70655**
**(337) 639-4309**
**Counsel for Plaintiffs/Appellants:**
>       **Bruce Miller**
>       **Edna Miller**


**Raleigh Newman**
**Donald McKnight**
**Attorneys at Law**
**1830 Hodges Street**
**Lake Charles, LA 70601**
**(337) 439-5788**
**Counsel for Plaintiffs/Appellants:**
>       **Bruce Miller**
>       **Edna Miller**

**Michael Bruce Holmes**
**Attorney at Law**
**P. O. Dr. 790**
**Kinder, LA 70648**
**(337) 738-2568**
**Counsel for Defendants/Appellees:**
>       **Timothy J. Dempsey**
>       **Arizona Chemical Company, Inc.**

**Olivia S. Regard**
**Jones, Walker, Waechter, Poitevent,**
**Carrère & Denègre, L.L.P.**
**600 Jefferson, Suite 1600**
**P.O. Box 3408**
**Lafayette, LA 70502-3408**
**(337) 262-9000**
**Counsel for Defendants/Appellees:**
>       **Arizona Chemical Company, Inc.**
>       **Timothy J. Dempsey**

**DECUIR, Judge.**

Edna Miller and her son, Bruce Miller, sued Arizona Chemical Co., Inc. for personal injuries following the release of a chemical vapor into the air. Arizona chemical admitted liability, and the issues of causation and damages went to trial. A jury verdict was returned in favor of Edna Miller, awarding her $12,500.00 in damages; regarding the claims of Bruce Miller, a verdict in favor of Arizona Chemical was returned. Both plaintiffs have appealed, urging error in the denial of their motions for new trial and JNOV and in the award of damages.

The record reveals the following facts: Shortly after 1:30 p.m. on March 8, 2000, a pressurized tank at the Arizona Chemical manufacturing plant in Oakdale, Louisiana overheated, resulting in the short-term release of a chemical vapor into the air. The tank, which had a safety shut-off valve that failed, contained a heat transfer fluid called XCeltherm MK-1, a substance comprised of 27% biphenyl and 73% phenyl oxide. As the vapor was released into the air, the wind took it toward the neighborhood where Mrs. Miller resides. The release was brought under control within minutes, and at 1:55 p.m., an all clear signal was sounded.

Immediately upon the chemical release and in compliance with standard safety procedures, Arizona Chemical evacuated its thirty-three employees, alerted both the media and nearby hospitals, and notified all necessary state agencies that a release had occurred. Regarding medical care, the local emergency room was provided with a description of the chemical to assist the hospital with treating anyone who sought medical care as a result of the release. Including Mrs. Miller, five people visited the emergency room, and Arizona Chemical paid all of those expenses. Arizona Chemical also covered cleaning expenses for anyone who had a chemical residue inside or on the outside of his home or car.

Mrs. Miller, then sixty-eight years old, was inside her home at the time of the incident at issue. Mr. Miller, forty-eight years old at the time, was at work as a groundskeeper at the nearby high school. He heard about the incident on the radio and immediately left work to see about his mother. When he arrived at her house, she was outside, nauseated, but about to leave the area. Mr. Miller helped her into her car and watched as she drove away. He then proceeded inside the house for about ten minutes where he checked on things, had a glass of water, washed his face, then left. He testified that while he was in her house, his eyes and throat were burning, and he was short of breath. Later that day, Mrs. Miller sought treatment at the local emergency room for complaints of palpitations, shortness of breath, and nausea. The hospital records reflect she no longer was suffering from the irritating effects of the chemical exposure and she was discharged. While Mr. Miller did not seek medical care at the time, he recalled that within five hours of his exposure to the chemical vapor, a rash developed on his hands. Mr. Miller, however, has suffered with skin rashes many times both before and after the chemical exposure. Additionally, both plaintiffs suffer from diabetes, hypertension, and other chronic ailments.

At the time of trial in February of 2009, both plaintiffs complained of continuing symptoms from the brief chemical exposure, lasting no more than ten minutes, which they experienced nine years previously on March 8, 2000.

In this appeal, the plaintiffs first contend the trial court abused its discretion in denying their request to depose, or examine in open court, Juror Number Two, regarding his alleged failure to disclose relevant information during *voir dire* proceedings. This allegation is based on a note received by the court, after trial, from another juror who expressed her disagreement with the verdict and claimed that Juror

2

Number Two made disparaging comments during deliberations about Mr. Miller's brother and said that he had once been to Mrs. Miller's house. In response to this communication from a juror, the plaintiffs sought to depose Juror Number Two.

The trial court denied the request but informed the plaintiffs that Juror Number Two could be subpoenaed to testify at the hearing on the motion for new trial if they laid a proper foundation and proved a factual basis to warrant questioning the juror. The plaintiffs failed to meet this burden, offering no facts to support the suggestion that Juror Number Two was biased or had lied during *voir dire*. They also failed to subpoena Juror Number Two. Accordingly, the trial court denied the motion for new trial based on juror misconduct.

Our review of the record reveals no error in the trial court's decision. The trial court based its refusal to allow the taking of deposition testimony from Juror Number Two on the Jury Shield Law, La. C.Evid. Art. 606(B), which provides in pertinent part:

> Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith[.]

At the subsequent hearing on their motion for new trial, the plaintiffs did not subpoena Juror Number Two, and they failed to present a factual basis sufficient to prove allegations of juror misconduct or a juror's untruthfulness during *voir dire*. Furthermore, the trial court specifically noted, "[e]ven if the allegations had been proved by the movers, the Court does not find that what was alleged to have been done by Juror Number Two was of such a grievous nature that it precluded the

3

impartial administration of justice." The record reveals no manifest error in these conclusions.

The plaintiffs next contend the trial court erred in failing to grant their motion for judgment notwithstanding the verdict with regard to Bruce Miller's claim. Our review of the evidence discloses no error in this decision. The record is replete with evidence of Mr. Miller's longstanding chronic medical problems, his history of rashes which were later found to be associated with his use of Celebrex, and his longtime smoking habit. While Mr. Miller's treating family practitioner testified that his breathing problems, rashes, and other symptoms were related to the chemical exposure, the physician did not even know, until the day of trial, what chemical the Millers were exposed to, much less the type of ailments that particular substance could cause. The doctor testified that the temporal relationship between Mr. Miller's symptoms and the chemical release was the basis for his opinion that the two are related. In contrast, the defendants presented the opinions of expert toxicologists who testified that Mr. Miller's continuing symptoms could not have been caused by the brief transient exposure to XCeltherm vapor on March 8, 2000.

For the same reasons, we also find no merit to the plaintiffs' contention that Mrs. Miller is entitled to an increase in damages and Mr. Miller is entitled to an award of damages. Their treating physician's testimony was completely discredited by the testimony of the defendants' toxicologists, and their attempts to link chronic unrelated health issues to this one-time, momentary inhalation event were exaggerated and not well-founded. We find no manifest error in the factual conclusion that the damages awarded to Mrs. Miller were commensurate with the injuries actually proved to be related to the chemical release. We also find no error

4

in the denial of Mr. Miller's claim for damages as the record reflects he did not meet his burden of proof.

For the above and foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed to the plaintiffs.

**AFFIRMED.**

This opinion is NOT DESIGNATED FOR PUBLICATION. Rule 2-16.3, Uniform Rules, Courts of Appeal.